IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL JAKE BAILEY, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CITY OF ALLENTOWN, et al., | : | |
| | : | No. 11-2600 |
| | : | |
| Defendants. | : | |

Goldberg, J.                                                                                               August 13, 2013

## MEMORANDUM OPINION

Pro se Plaintiff, Michael Jake Bailey, has brought suit against the City of Allentown, the Allentown Police Department and Officer Scott Magill of the Allentown Police Department, for actions allegedly taken by Officer Magill during Plaintiff's arrest for assault. Plaintiff alleges that just after his arrest, Officer Magill provided Sirena Tirado, Plaintiff's girlfriend at the time, with access to his apartment without his consent. As a result, Plaintiff claims that Tirado was able to steal his personal property while he was incarcerated. Plaintiff's amended complaint asserts numerous claims under 42 U.S.C. § 1983 for violations of the Fourth and Eighth Amendments and the state-created danger doctrine, as well as Monell liability. On November 27, 2012, the Defendants filed a motion for summary judgment. For the reasons stated below, Defendants' motion will be granted.

1

## I. <u>FACTUAL AND PROCEDURAL HISTORY</u>[1]

On December 24, 2009, Plaintiff was involved in a physical altercation with Sirena Tirado within his apartment. (Pl.'s Dep., Doc. No. 50-3, Ex. B, p. 83.) After Tirado ran out of the apartment, she and Plaintiff placed separate phone calls to 911. Officer Scott Magill of the Allentown Police Department responded to these calls. (Defs.' Stat. Facts, Doc. 50-2, at ¶¶ 9-11.) After speaking with Officer Magill about the altercation, Plaintiff advised Magill that Tirado did not reside in his apartment and requested that he remove her from the premises. (Pl.'s Stat. Facts, Doc. 51, at ¶ 3.) Tirado, on the other hand, informed police that she resided in the apartment. (Defs.' Stat. Facts, Doc. 50-2, at ¶ 16.) Evidence of the struggle within the apartment corroborated the version of events reported by Tirado, leading the police to believe that she indeed lived in the apartment.[2] (<u>Id.</u> at ¶¶ 17–22, 28.) Officer Magill arrested Plaintiff for assault, searched his pockets, retrieved his keys and gave them to Tirado. (Pl's Stat. Facts, Doc. 51, at ¶ 5.) Plaintiff claims that Officer Magill's actions allowed Tirado to return to his apartment and burglarize his home, stealing all of his belongings. (<u>Id.</u> at ¶ 8; Defs.' Stat. Facts, ¶ 34.) On June 2, 2010, Plaintiff pled guilty in the Court of Common Pleas of Lehigh County to assault and making terroristic threats.

---

[1] The following facts are undisputed, unless otherwise noted.

[2] Tirado stated that Plaintiff had thrown her through a coffee table and tried to choke her by pouring a gallon of iced tea down her throat. The officers found evidence of a broken coffee table, a puddle of ice tea on the floor, an empty gallon of iced tea and numerous visible injuries on Tirado's face and hands. (Pl.'s Dep., p. 101; Defs.' Mot., Exs. C-D.)

Plaintiff filed an amended complaint on September 22, 2011, asserting claims under 42 U.S.C. § 1983 for violation of the Fourth[3] and Eighth[4] Amendments, the state-created danger doctrine, and municipal liability pursuant to Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978). On November 27, 2012, Defendants Officer Magill, Allentown Police Department and the City of Allentown filed a motion for summary judgment. The motion is now fully briefed and ready for disposition.

II.     **STANDARD OF REVIEW**

A party moving for summary judgment bears the initial burden of demonstrating that there are no genuine issues of material fact and that judgment is appropriate as a matter of law.

---

[3] It appears that the only search or seizure made by Officer Magill that Plaintiff argues was in violation of the Fourth Amendment was the removal of keys and cell phone from his pocket after his arrest. A search incident to a lawful arrest does not violate the Fourth Amendment. United States v. Robinson, 414 U.S. 218, 234-35 (1973). Further, a search of personal effects as part of a routine administrative procedure at a police station during booking is not unreasonable and does not violate the Fourth Amendment. Illinois v. Lafayette, 462 U.S. 640, 648 (1983). Plaintiff has not argued that his arrest was unlawful, nor has he presented any evidence to suggest that these searches were unreasonable. To the extent that Plaintiff attempts to establish a Fourth Amendment violation for the removal of items from his apartment, he has not presented any evidence to suggest that Officer Magill personally removed Plaintiff's property from his apartment, or that Tirado was acting as an agent or instrument of the Government to effectuate an illegal seizure. See Skinner v. Ry. Labor Execs.' Ass'n, 489 U.S. 602, 614 (1989) ("Whether a private party should be deemed an agent or instrument of the Government for Fourth Amendment purposes necessarily turns on the degree of the Government's participation in the private party's activities."). Therefore, we find that summary judgment should be granted as to Plaintiff's Fourth Amendment claim.

[4] There is no evidence in the record relating to the conditions of Plaintiff's confinement, and all of the alleged conduct by Officer Magill occurred before Plaintiff's conviction. The Eighth Amendment "limits the kinds of punishment that can be imposed on those convicted of crimes, . . . proscribes punishment grossly disproportionate to the severity of the crime, . . . [and] imposes substantive limits on what can be made criminal and punished as such[.]" Ingraham v. Wright, 430 U.S. 651, 667 (1977). To the extent that Plaintiff attempts to argue that the loss of his property is cruel and unusual punishment, Plaintiff has admitted that no state actor was directly involved in the theft of his property. Accordingly, as Plaintiff has failed to present any evidence to support an Eighth Amendment violation, summary judgment is also appropriate on that claim.

3

FED. R. CIV. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment has been made, the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). An issue is "genuine" if a reasonable jury could rule in favor of the non-moving party based on the evidence presented. Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). The non-moving party cannot avert summary judgment with speculation or conclusory allegations, but rather must cite to the record. Ridgewood Bd. of Educ. v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir. 1999); FED. R. CIV. P. 56(c).

On a motion for summary judgment, the court considers the evidence in the light most favorable to the non-moving party. Anderson, 477 U.S. at 256. Courts may not make credibility determinations at the summary judgment stage. Boyle v. Cnty. of Allegheny, Pa., 139 F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc., 998 F.2d 1224, 1230 (3d Cir. 1993) cert. denied, 510 U.S. 994 (1993)). "While the pleadings of pro se litigants are held to less stringent standards than those drafted by lawyers, a pro se plaintiff must still meet the above standard to survive a motion for summary judgment." Gyamfi v. Wendy's Int'l, 2011 WL 308652, at *3 (E.D. Pa. Jan. 31, 2011).

### III. DISCUSSION

#### A. Qualified Immunity

Defendants argue that Officer Magill is entitled to qualified immunity for his actions outlined in the amended complaint because a reasonable police officer placed in the same situation would not have had reason to believe that his actions violated any clearly established

4

right, and the Constitution does not provide an affirmative obligation for Officer Magill to protect against property crimes committed by third parties. (Mot. for Summ. J., pp. 5, 15.)

Government officials are extended qualified immunity in section 1983 actions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Messerschmidt v. Millender, 132 S. Ct. 1235, 1244 (2012) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." Id. at 1245 (quoting Anderson v. Creighton, 483 U.S. 635, 639 (1987)). A court must engage in a two-part inquiry to determine if qualified immunity applies: (1) "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right"; and (2) "whether the right at issue was 'clearly' established at the time of defendant's alleged misconduct." Pearson v. Callahan, 555 U.S. 223, 232 (2009) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).

**1. Violation of a Constitutional Right — The State Created Danger Doctrine**

In DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189 (1989), the United States Supreme Court held that a state does not have an affirmative obligation to protect its citizens' life, liberty and property from private invasion under the Due Process Clause. However, when a state takes a person into custody, it assumes an affirmative duty to protect him from harm. Id. at 199-200. The principle derived from this statement has developed into what is known as the state-created danger doctrine. A state-created danger exists "when state authority is affirmatively employed in a manner that injures a citizen or renders him 'more vulnerable to

injury from another source than he or she would have been in the absence of state intervention.'" Bright v. Westmoreland Cnty., 443 F.3d 276, 281 (3d Cir. 2006) (quoting Schieber v. City of Philadelphia, 320 F.3d 409, 416 (3d Cir. 2003)).

> There are four required elements to a state-created danger claim:
>
> (1) the harm ultimately caused was foreseeable and fairly direct;
> (2) a state actor acted with a degree of culpability that shocks the conscience;
> (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
> (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

Id. at 281 (quotation marks omitted). Courts have applied the state-created danger doctrine in cases involving "death or substantial physical injuries or assaults[, but] have refused to recognize such claims where a plaintiff's injuries have been less severe." Miller v. Webber, 1997 WL 698043, at *1 (E.D. Pa. Nov. 4, 1997); see also Johnson v. Dallas Indep. Sch. Dist., 38 F.3d 198, 201 (5th Cir. 1994) ("the environment created by the state actors must be dangerous"). The parties have not cited to, and we are unaware of, a case within this Circuit or elsewhere, that has found a state-created danger where a property crime was committed by a third party. Although we express a significant amount of skepticism that a property crime committed by a third party could establish a state-created danger claim, we need not answer this question, as Plaintiff is unable to satisfy the second element of his claim.

In order to establish the second element of a state-created danger claim—that the state actor acted with a degree of culpability that shocks the conscience—"the exact degree of wrongfulness necessary to reach the 'conscience-shocking' level depends on the circumstances

6

of a particular case and depends in particular on 'the extent to which a state actor is required to act under pressure.'" Walter v. Pike County, Pa., 544 F.3d 182, 192 (3d Cir. 2008) (quoting Miller v. City of Philadelphia, 174 F.3d 368, 375 (3d Cir. 1999)); Sanford v. Stiles, 456 F.3d 298, 301 (3d Cir. 2006)). When a state actor is faced with a hyperpressurized situation, such as a police chase, only intent to harm will shock the conscience. Alternatively, when a state actor has time to make an unhurried judgment, deliberate indifference will suffice. Id. (quoting Sanford, 456 F.3d at 309). A middle ground exists "[w]hen a state actor is not confronted with a 'hyperpressurized environment' but nonetheless does not have the luxury of proceeding in a deliberate fashion." In that situation, an intermediate standard applies, where a plaintiff must demonstrate that the state actor "consciously disregarded a great risk of harm." Sanford, 456 F.3d at 310. Under these standards, mere negligence on the part of a state-actor will not suffice. Brown v. Commonwealth of Pennsylvania, Dept. of Health Emergency Med. Svcs., 318 F.3d 473, 479 (3d Cir. 2003).

Defendants argue that Plaintiff did not act with the requisite degree of culpability, such that his actions shock the conscience. Officer Magill responded to the scene of a domestic disturbance in which both of the parties had been injured, one significantly. (Defs.' Mot., Ex. D.) Although by the time the officers arrived, Plaintiff and Tirado were separated, Magill had to conduct a quick investigation, and ultimately, an arrest. While this scenario is not the hyperpressurized situation found in a police chase, Officer Magill did not have the luxury of proceeding in a deliberate fashion. Thus, we find that the intermediate standard, requiring a conscious disregard of a great risk of harm, is applicable. Viewing the facts in the light most favorable to Plaintiff, we find that Officer Magill did not consciously disregard a great risk of

harm to Plaintiff. The evidence found at the scene completely corroborated Tirado's account of the assault. Although Plaintiff argues that Officer Magill should have examined the lease prior to allowing Tirado to remain in the apartment, his failure to do so while in the midst of conducting an arrest was, at most, negligent. Therefore, we find that no reasonable jury could conclude that Officer Magill consciously disregarded a great risk of harm to Plaintiff when he allowed Tirado to stay in the home that she claimed to share with Plaintiff.

**2. Whether the Right at Issue was Clearly Established**

Even if Plaintiff was able to show a violation of a constitutional right, that right must have been clearly established at the time of Officer Magill's conduct to avoid a grant of summary judgment on qualified immunity grounds. In determining whether a defendant's conduct violated a clearly established right, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Assaf v. Fields, 178 F.3d 170, 177 (3d Cir. 1999) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). The very act in question need not have been previously held unlawful, but instead, "in light of preexisting law the unlawfulness must be apparent." Id.; see also Eddy v. Virgin Islands Water and Power Auth., 256 F.3d 204, 208 (3d Cir. 2001) (citing Good v. Dauphin Cnty. Soc. Servs. for Children & Youth, 891 F.2d 1087, 1092 (3d Cir. 1989)).

We conclude that Officer Magill did not act in such a way that a reasonable officer would know that his actions would violate the Constitution. As noted above, the Court is unaware of, and the parties have not cited to any, cases that have found a state-created danger when a third party engages in a property crime. As courts in this Circuit have been unwilling to extend the state-created danger doctrine beyond situations involving death or substantial physical injuries or

assaults, it would certainly not be apparent to Officer Magill, or any other officer, that providing Tirado with keys to the apartment could constitute a state-created danger. Therefore, it cannot be said that a reasonable officer would have known that those actions would violate Plaintiff's constitutional rights.

In summary, considering the evidence in the light most favorable to Plaintiff, we find that there are no genuine issues of material fact as to whether Officer Magill's actions constitute a state-created danger, or that any clearly established right was violated. We therefore find that no reasonable jury could conclude that Plaintiff experienced a violation of his constitutional rights, and we find that Officer Magill is entitled to qualified immunity.

### B. Monell Liability

A municipality may be held liable for its employee's violation of a citizen's constitutional rights under section 1983, although not on a respondeat superior theory of liability. Monell v. Dept. of Soc. Servs. of City of New York, 436 U.S. 658, 690-92 (1978). To prevail on a Monell claim, a plaintiff must show a policy[5] or custom[6] created by a policymaker that caused the alleged constitutional violation. Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 583-84 (3d Cir. 2003) (citing Bd. of the Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 404 (1997)). To establish causation, "there must be an affirmative link between the policy and

---

[5] A "[p]olicy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)).

[6] "A custom is an act 'that has not been formally approved by an appropriate decisionmaker,' but that is 'so widespread as to have the force of law.'" Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (quoting Bd. of the Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 417 (1997)).

the particular constitutional violation alleged." City of Okl. City v. Tuttle, 471 U.S. 808, 823 (1985).

There are three circumstances under which a municipality may be held liable under Monell: (1) where an "appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy"; (2) "where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself"; and (3) "where the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice is so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need."[7] Natale, 318 F.3d at 584 (quoting Bd. of the Cnty. Comm'rs of Bryan Cnty, Okl. v. Brown, 520 U.S. 397, 417-18 (1997) (Souter, J., dissenting)).

Here, after carefully examining the evidence of record, we conclude that Plaintiff has failed to establish that the City of Allentown had a policy or custom that caused the alleged constitutional violation. Plaintiff merely asserts that the City of Allentown should be liable because Officer Magill is its employee. This is analogous to a respondeat superior theory of liability, which has been expressly denounced by the Supreme Court. See Monell, 436 U.S. at 691. Plaintiff has not presented evidence of any prior, similar incidents in the municipality, or

---

[7]The Third Circuit has held that "a failure to train, discipline or control can only form the basis for section 1983 municipal liability if the plaintiff can show both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate." Montgomery v. De Simone, 159 F.3d 120, 127 (3d Cir. 1998) (citing Bonenberger v. Plymouth Twp., 132 F.3d 20, 25 (3d Cir. 1997)).

any knowledge or involvement by a decisionmaker. Further, and perhaps most importantly, Plaintiff has failed to establish that Officer Magill violated his constitutional rights. See Brown v. Commonwealth of Pennsylvania, Dept. of Health Emergency Med. Svcs., 318 F.3d 473, 482 (3d Cir. 2003) ("[F]or there to be municipal liability, there still must be a violation of the plaintiff's constitutional rights.")

Therefore, Plaintiff has failed to present sufficient evidence that would lead a reasonable jury to find the City of Allentown liable under Monell.[8] Accordingly, Defendants' motion for summary judgment will be granted.

## IV. CONCLUSION

Plaintiff has failed to establish a violation of the Fourth or Eighth Amendments, nor has he presented evidence to support a finding of Monell liability. Plaintiff cannot meet the elements of a state-created danger claim, and even if he was successful at doing so, Officer Magill would be protected by qualified immunity. Therefore, we find that summary judgment is appropriate.

Our Order follows.

---

[8] We must also grant summary judgment on all claims against the Allentown Police Department. Police departments without an identity separate from the municipality in which it operates are not proper defendants in an action pursuant to 42 U.S.C. § 1983. See Martin v. Red Lion Police Dep't, 146 Fed. Appx. 558, 562 n.3 (3d Cir. 2005) (citing Johnson v. City of Erie, 834 F. Supp. 873, 878-79 (W.D. Pa. 1993) (holding that a municipal police department, without an identity separate from the municipality of which it is a part, is not a proper defendant in a § 1983 action)).